**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LOUIS A. COFFELT, Jr., | ) | NO. ED CV 13-0568 RGK (AS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION OF A** |
| | ) | |
| T. BAKER, | ) | **UNITED STATES MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |

This Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On April 3, 2013, pro se Plaintiff Louis A. Coffelt, Jr., filed a Civil Rights Complaint ("Complaint"), pursuant to 42 U.S.C. § 1983, against California Department of Corrections and Rehabilitation ("CDCR") Parole Unit Supervisor T. Baker ("Defendant") in her

individual capacity. On July 22, 2013, Defendant filed a Motion to Dismiss the Complaint ("Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 31, 2013, Plaintiff filed an Opposition to the Motion. Defendant filed a Reply on August 27, 2013, and Plaintiff filed a "Second Opposition" to the Motion on September 5, 2013.

For the reasons set forth below, it is recommended that Defendant's Motion be GRANTED and the action dismissed with prejudice.

## II.

### PLAINTIFF'S ALLEGATIONS

Plaintiff alleges he is a parolee under the CDCR's supervision and on June 26, 2012, he was compelled to sign a new set of written parole conditions, which included the condition that he "actively participate in a [Division of Adult Parole Operations ("DAPO")]-approved treatment program specific to Sex Offenders."[1] (Complaint at 3, Exh. A).[2]

---

[1] Although neither party explains why Plaintiff is on parole, the Notice and Conditions of Parole Plaintiff signed on June 26, 2012, indicate that Plaintiff was convicted of lewd and lascivious acts on a child under 14 years of age in violation of California Penal Code § 288(a). (See Complaint, Exh. A).

[2] "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (9th Cir. 1991) (citations and internal punctuation omitted); see also Wilhelm v. Rotman, 680 F.3d 1113, 1116 n.1 (9th Cir. 2012) ("'When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment.'" (citation omitted)).

2

Plaintiff states that on January 9, 2013, he and about eight other parolees attended a treatment program meeting hosted by two CDCR social workers, one of whom indicated that the social workers would bring donuts for the parolees if the parolees sufficiently participated in the meeting.   (Complaint at 3).   Plaintiff "made a few verbal statements" in response indicating his belief that "'bringing donuts is retarded[,]'" and the social workers, without warning Plaintiff or directing him to stop making statements, asked Plaintiff to immediately leave the meeting.   (Id. at 3-4, 7-8).   Approximately twenty minutes later, a parole agent asked Plaintiff what happened at the meeting. Plaintiff explained what he had said, after which Plaintiff was immediately handcuffed and placed into custody.   (Id. at 4).

That same day, Parole Agent V. Salmeron signed a "Charge Report" alleging that Plaintiff failed to actively participate in treatment, in violation of his parole conditions, and recommended that Plaintiff be retained in custody on a parole hold:[3]

> On 01-09-13, [Plaintiff] attended his scheduled Parolee
> Outpatient Clinic group at the parole office. . . .  He was
> initially actively participating in group in an appropriate

---

[3]   "A parole hold authorizes the detention of a parolee charged with an alleged parole violation pending a parole revocation hearing." Valdivia v. Davis, 206 F. Supp. 2d 1068, 1070 (E.D. Cal. 2002); see also People v. Holdsworth, 199 Cal. App. 3d 253, 261 (1988) (A "parole hold is a temporary measure to restrain a parolee suspected of violating parole."). "The ability to issue a parole hold gives the parole officer 'the power . . . to have the parolee restrained merely by exercising his authority to take the parolee into custody and book him into a local jail.'" Swift v. California, 384 F.3d 1184, 1191-92 (9th Cir. 2004) (quoting In re Law, 10 Cal. 3d 21, 23 n.2 (1973)).

manner but then he became verbally combative with passive-aggressive comments toward the group leaders. He was warned about his disruptive comments, and failed to curtail his behavior. His actions led to the group leader removing him from the group and reporting his behavior to the Officer of the Day. [¶] [Plaintiff] admitted to Parole Agent Brooks that he told the group leaders that they were retarded. [Plaintiff's] failure to cooperate and maintain appropriate boundaries led to his arrest.

(Complaint at 4-5, Exh. B). Defendant reviewed the Charge Report and concluded that probable cause existed to further investigate the matter, refer it to the Board of Parole Hearings ("BPH"), and to maintain a parole hold on Plaintiff, who remained in custody at the Riverside County Jail for eight days before his release. (Id. at 5, 13, Exh. B). Plaintiff does not know why he was released from custody after eight days. (Id. at 5). However, Plaintiff contends that since his parole conditions did not include a prohibition against making "passive-aggressive comments" or a requirement that he "maintain appropriate boundaries[,]" he received no notice that these actions violated his parole, and Defendant arbitrarily deprived him of his liberty without due process of law when she ratified the parole hold

//

//

//

placed on Plaintiff, which caused him to spend eight days in custody.[4] (<u>Id.</u> at 2-15).  Plaintiff seeks $80,000 in damages.  (<u>Id.</u> at 15).

## III.

### STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted if Plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678; <u>Hartmann v. Cal. Dep't of Corr. & Rehab.</u>, 707 F.3d 1114,

---

[4] Despite Plaintiff's repeated references to "parole revocation," (<u>see</u>, <u>e.g.</u>, Complaint at 2, 4, 9), the documents attached to Plaintiff's Complaint indicate only that Plaintiff was subject to a parole hold.  (<u>See</u> Complaint, Exh. B); <u>see also</u> <u>People v. Hunter</u>, 140 Cal. App. 4th 1147, 1154 (2006) ("[E]ven though a parolee may be arrested on a parole violation, his parole may not be formally revoked until he has been afforded a formal parole revocation hearing."). Thus, the Court need not, and does not, accept Plaintiff's legal conclusion that a "parole revocation" occurred.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); <u>Colony Cove Props., LLC v. City of Carson</u>, 640 F.3d 948, 957 (9th Cir.) ("[T]he court need not, and does not, accord an assumption of truthfulness to legal conclusions that are not supported by factual allegations in the Complaint or that are contradicted by documents referred to in the Complaint."), <u>cert. denied</u>, 132 S. Ct. 456 (2011).  Indeed, Plaintiff's allegation that he was released within eight days of the parole hold being issued suggests that the parole hold was removed without a formal parole revocation hearing being held.  Thus, the Court treats Plaintiff's § 1983 claim as challenging only Defendant's actions regarding the eight-day parole hold against Plaintiff.

1   1121-22 (9th Cir. 2013).  Although the Plaintiff must provide "more

2   than labels and conclusions, and a formulaic recitation of the elements

3   of a cause of action will not do[,]" Twombly, 550 U.S. at 555; Iqbal,

4   556 U.S. at 678, "[s]pecific facts are not necessary; the [Complaint]

5   need only give the defendant[s] fair notice of what the . . . claim is

6   and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89,

7   93 (2007) (per curiam) (citations and internal quotation marks

8   omitted); Twombly, 550 U.S. at 555.

9

10      In considering whether to dismiss a complaint, the Court must

11   accept the allegations of the complaint as true, Erickson, 551 U.S. at

12   93-94; Albright v. Oliver, 510 U.S. 266, 267 (1994), construe the

13   pleading in the light most favorable to the pleading party, and resolve

14   all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411,

15   421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Pro

16   se pleadings are "to be liberally construed" and are held to a less

17   stringent standard than those drafted by a lawyer. Erickson, 551 U.S.

18   at 94; Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see

19   also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal

20   incorporated the Twombly pleading standard and Twombly did not alter

21   courts' treatment of pro se filings; accordingly, we continue to

22   construe pro se filings liberally when evaluating them under Iqbal.").

23   The Court "need not accept as true allegations contradicting documents

24   that are referenced in the complaint or that are properly subject to

25   judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th

26   Cir. 2006). Dismissal for failure to state a claim can be warranted

27   based on either a lack of a cognizable legal theory or the absence of

28   factual support for a cognizable legal theory. See Mendiondo v.

Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim.  Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

**IV.**

**DISCUSSION**

**A.   Heck v. Humphrey**

Defendant initially contends that Plaintiff's allegations are not cognizable as a § 1983 action, but must instead be brought as a petition for writ of habeas corpus.  (Motion at 5-8).  However, Defendant has not demonstrated that this is the case.

Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release.  Heck v. Humphrey, 512 U.S. 477, 481 (1994); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (A "prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'"  (citation omitted)).  In Heck, the Supreme Court considered whether a state prisoner may bring a suit for damages under 42 U.S.C. § 1983 based on the constitutional invalidity of a conviction or sentence, and determined that such claims are not cognizable, stating:

//

//

7

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87.

The Heck bar applies in the parole context. See, e.g., Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (Heck barred inmate's § 1983 claim alleging that "defendants violated his due process rights by considering false information in his prison file to find him ineligible for parole" because "[f]ew things implicate the validity of continued confinement more directly than the allegedly improper denial of parole."); Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995) ("In addition to convictions and sentences, Heck applies to proceedings which call into question the fact or duration of parole."). However, Heck does not invariably require dismissal of any § 1983

challenge a parolee brings.  Rather, a parolee's § 1983 "action is not barred by Heck if it is not a collateral attack on *either* the fact of a parolee's confinement as a parolee or the parolee's underlying conviction or sentence." Thornton v. Brown, 724 F.3d 1255, 1257 (9th Cir. 2013) (emphasis in original).  Defendant has the burden of demonstrating that Heck bars Plaintiff's § 1983 claim. See Sandford v. Motts, 258 F.3d 1117, 1119 (9th Cir. 2001) ("It was the burden of the defendants to establish their [Heck] defense by showing what the basis was; they failed to do so.").

"Here, Plaintiff does not challenge his status as a parolee or the duration of his parole[.]" Thornton, 724 F.3d at 1261.  Nor does Plaintiff contend that his underlying conviction or sentence is invalid, or that any of the parole conditions imposed upon him are improper. (See Complaint at 1-15).  Rather, Plaintiff objects that Defendant arbitrarily deprived him of due process of law by maintaining a parole hold against him that kept him in jail for eight days because the parole hold was not authorized by "any pertinent condition of parole[,]" and he received no notice that he could be subject to a parole hold based on his comments at the treatment program meeting. (Id. at 2-15, Exh. B).  However, Plaintiff also alleges that he does not know why he was released from custody (see id. at 5), and defendant has not explained the basis for Plaintiff's release.  Without this information, the Court lacks the factual predicate to apply Heck since it cannot determine whether a judgment in Plaintiff's favor would necessarily "affect the 'fact or duration' of his parole [or] 'necessarily imply' the invalidity of his state-court conviction or sentence." Thornton, 724 F.3d at 1261.  Therefore, Defendant has not

met her burden of establishing a <u>Heck</u> defense.[5]  <u>Sanford</u>, 258 F.3d at 1119; <u>see also</u> <u>French v. Adams County Det. Ctr.</u>, 379 F.3d 1158, 1160 (10th Cir. 2004) (<u>Heck</u> did not bar plaintiff's claim that his rights were violated when he was held in jail for 73 days pursuant to a parole hold since, among other reasons, "the record does not even indicate whether parole was ever revoked on the ground that led to the incarceration in question."); <u>Hughes v. Lott</u>, 350 F.3d 1157, 1161 (11th Cir. 2003) (The district court erred in finding plaintiff's claims were <u>Heck</u>-barred when it was impossible to determine whether a successful § 1983 claim would necessarily imply the invalidity of plaintiff's convictions since "the circumstances surrounding [plaintiff's] convictions . . . [were] unknown from the record.").

**B.   <u>Absolute Immunity</u>**

    Defendant next contends that she is entitled to absolute immunity for her role in the parole hold placed on Plaintiff.  (Motion at 9-11). The Court disagrees.

    "'Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities.'"  <u>Tamas v. Dep't</u>

---

    [5]  Indeed, since Plaintiff was released from the parole hold after eight days, (<u>see</u> Complaint at 13), and there is absolutely no indication that his parole was revoked or that the duration of his parole was extended in any manner, Plaintiff's due process claim is likely not <u>Heck</u>-barred because his claim, "if successful, would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgment[] underlying that parole term."  <u>Thornton</u>, 724 F.3d at 1264.  However, as noted, the Court cannot conclusively determine this issue without additional information.

of Soc. & Health Servs., 630 F.3d 833, 841-42 (9th Cir. 2010) (citation omitted); see also Buckwalter v. Nev. Bd. of Med. Exam'rs, 678 F.3d 737, 740 (9th Cir. 2012) ("The paradigmatic functions giving rise to absolute immunity are those of judges and prosecutors."). However, it is "'the nature of the function performed, not the identity of the actor who performed it[,]'" that determines whether an official is entitled to absolute immunity. Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)); see also Cleavinger v. Saxner, 474 U.S. 193, 201 (1986) ("Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." (citation omitted)). Thus, absolute immunity has been extended to various state officials, including parole officials, "when they are performing quasi-prosecutorial and quasi-judicial functions." Tamas, 630 F.3d at 833; see also Thornton, 724 F.3d at 1259 (Absolute immunity "extend[s] to parole officials for the imposition of parole conditions because that task is integrally related to an official's decision to grant or revoke parole, which is a 'quasi-judicial' function." (citation and some internal quotation marks omitted; brackets in original)); Brown v. Cal. Dep't of Corrs., 554 F.3d 747, 751 (9th Cir. 2009) ("[P]arole board members are entitled to absolute immunity for parole board decisions."). "An official seeking absolute immunity bears the burden of showing that it is justified." Slater v. Clarke, 700 F.3d 1200, 1203 (9th Cir. 2012); Lacey v. Maricopa County, 693 F.3d 896, 912 (9th Cir. 2012) (en banc).

Defendant contends she is entitled to absolute immunity because she acted in a "quasi-judicial" capacity in determining that probable

cause existed to maintain a parole hold against Plaintiff and to refer the matter to the BPH while the alleged parole violation was investigated.   (Motion at 9-11).   However, "[p]arole officers' 'immunity for conduct arising from their duty to supervise parolees is qualified.'" Thornton, 724 F.3d at 1259 (citation omitted); Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004).   Therefore, parole officers are not entitled to absolute immunity for conduct such as investigating parole violations, arresting a parolee, ordering the issuance of a parole hold, and recommending the initiation of parole revocation proceedings. Swift, 384 F.3d at 1191-93.

In this case, Plaintiff claims that Defendant deprived him of due process of law by maintaining a parole hold against him that kept him in jail for eight days, even though it was not authorized by "any pertinent condition of parole." (Complaint at 2-15, Exh. B).   Thus, contrary to Defendant's contention, Plaintiff's allegations relate to conduct Defendant allegedly took while supervising Plaintiff on parole, and Defendant is not entitled to absolute immunity.[6] See Thornton, 724

---

[6] Defendant attempts to cast her actions as adjudicatory, arguing that "a parole agent is entitled to absolute immunity for the discretionary decision to issue a parole hold and commence revocation proceedings based upon evidence provided by others." (Motion at 10). However, Swift held that parole officers are not entitled to absolute immunity for issuing a parole hold. See Swift, 384 F.3d at 1192 (Parole officers who "ordered the issuance of a parole hold and arrest . . . performed a law enforcement function and are not entitled to absolute immunity for this conduct."). Moreover, there is simply no basis for the Court to conclude at this juncture that Defendant commenced – or even had the authority to commence – parole revocation proceedings against Plaintiff. See Swift, 384 F.3d at 1192-93 ("[P]arole officers under the California regulations must report parole violations, while the [parole board] is given the discretion to initiate the revocation proceedings.").

F.3d at 1259 ("Absolute immunity does not extend . . . to Plaintiff's claim that the parole officers enforced the conditions of his parole in an unconstitutionally arbitrary or discriminatory manner."); Swift, 384 F.3d at 1191-92 (parole officers not entitled to absolute immunity for issuing a parole hold and recommending that parole board initiate revocation procedures).

## C.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Ortiz v. Jordan, __ U.S. __, 131 S. Ct. 884, 888 (2011). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231; see also V-1 Oil Co. v. Smith, 114 F.3d 854, 857 (9th Cir. 1997) ("Through the application of the qualified immunity doctrine, public servants avoid 'the general costs of subjecting officials to the risks of trial – distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" (quoting Harlow, 457 U.S. at 816)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or

13

a mistake based on mixed questions of law and fact.'" <u>Pearson</u>, 555 U.S. at 231 (citations omitted).

To determine whether a government official is entitled to qualified immunity, the court must ascertain: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official's] conduct violated a constitutional right"; and (2) "whether the right was clearly established." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>modified by</u>, <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson</u>, 555 U.S. at 236; <u>Ashcroft v. al-Kidd</u>, __ U.S. __, 131 S. Ct. 2074, 2080 (2011).

Here, Plaintiff does not challenge his initial arrest for a purported parole violation. Instead, Plaintiff contends that Defendant deprived him of due process of law when she reviewed the arrest and concluded that probable cause existed: to further investigate whether Plaintiff had violated his parole; to refer the matter to the BPH; and to maintain a parole hold on Plaintiff. (Complaint at 2-15).

**1.    Procedural Due Process under <u>Morrissey</u>**

Although "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence[,]" <u>Greenholtz v. Inmates of the Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979), once an inmate has been released on

14

parole, his "liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."[7] Morrissey v. Brewer, 408 U.S. 471, 482 (1972); see also Benny v. United States Parole Comm'n, 295 F.3d 977, 985 (9th Cir. 2002) ("A parolee's conditional liberty is entitled to due process protection under the Fifth and Fourteenth Amendments."). However, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey, 408 U.S. at 480. Rather, the Supreme Court has recognized that "a parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision[,]" Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973), and the Supreme Court has established the "minimum requirements of due process" at each of these two stages. Morrissey, 408 U.S. at 485-90.

---

[7]   "A California inmate may serve his parole period either in physical custody, or elect to complete his sentence out of physical custody and subject to certain conditions." Samson v. California, 547 U.S. 843, 851 (2006). "Under the latter option, an inmate-turned-parolee remains in the legal custody of the [CDCR} through the remainder of his term, and must comply with all of the terms and conditions of parole, including mandatory drug tests, restrictions on association with felons or gang members, and mandatory meetings with parole officers[.]" Id. at 851; see also Morrissey v. Brewer, 408 U.S. 471, 477 (1972) ("The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.").

"The first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer." Morrissey, 408 U.S. at 485.  At this stage, "due process requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." Id. Additionally,

> the parolee should be given notice that [a preliminary] hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation.  The notice should state what parole violations have been alleged.  At the hearing the parolee may appear and speak on his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer.  On request of the parolee, [a] person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence.  However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

Id. at 486-87.  The parolee is also entitled to a written summary of the proceedings and a decision on the record.[8]  Id. at 487.

---

[8]  At the second stage, the parole revocation hearing,

the minimum requirements of due process . . . include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c)

Here, although Plaintiff's Complaint cites both <u>Morrissey</u> and <u>Scarpelli</u>, Plaintiff does not specifically allege that he was denied any of the procedural due process rights <u>Morrissey</u> set forth. Accordingly, Plaintiff's Complaint does not set forth a cognizable <u>Morrissey</u> procedural due process claim against Defendant.[9]   See <u>Wheat v. Lee</u>, 2013 WL 2285174, *8 (N.D. Cal. 2013) (Since "it appears that all attempts to revoke [plaintiff's] parole were dropped after the parole hold was lifted and he was released[,] [n]o procedural due process rights under [<u>Morrissey</u>] were violated[.]").

**2.   Prior Notice of Parole Condition**

"'It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty.'"

---

opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

<u>Id.</u> at 488-89.   The second stage requirements appear inapplicable to Plaintiff's case since he released after eight days on a parole hold and there is no indication a parole revocation hearing was held. <u>See</u> <u>Wheat v. Lee</u>, 2013 WL 2285174, *7 (N.D. Cal. 2013) ("As Plaintiff was released and never suffered formal revocation, only the first stage is at issue in the instant case.").

[9]   Plaintiff argues only that <u>Morrissey</u> "is pertinent to this action in that [Defendant] did not set forth any evidence to support Plaintiff's parole revocation." (Complaint at 12).   However, as discussed herein, since there is simply no indication that Plaintiff's parole was revoked, this argument is inapposite.

<u>United States v. Grant</u>, 816 F.2d 440, 442 (9th Cir. 1987) (citation omitted);[10] <u>United States v. Dane</u>, 570 F.2d 840, 843 (9th Cir. 1977). Thus, "due process mandates that [a parolee] cannot be subjected to a forfeiture of his liberty for [otherwise non-criminal] acts unless he is given prior fair warning" that the acts are proscribed.  <u>Dane</u>, 570 F.2d at 844; <u>Grant</u>, 816 F.3d at 442.

Plaintiff complains that Defendant denied him due process of law when he was arrested and detained under a parole hold without being provided "any prior notice of a pertinent condition of parole" that authorized the detention.  (Complaint at 2-15).  Plaintiff's claim is without merit.  Although Plaintiff complains that he was never warned that he could be arrested for making "verbal statements" to social workers, Plaintiff was arrested on January 9, 2013, for allegedly violating a condition of parole requiring him to "actively participate in a DAPO-approved treatment program specific to Sex Offenders." (Complaint at 3-4, Exh. B).  On June 26, 2012, Plaintiff signed a "Notice and Conditions of Parole" stating that he had read and understood the conditions of his parole, including the condition requiring his active participation in a DAPO-approved treatment program specific to Sex Offenders.  (<u>Id.</u> at 3, 5, Exh. A).  Accordingly,

---

[10]  "While *Grant* addressed the conditions of probation, not parole, the Supreme Court has recognized that, from a due process standpoint, parole and probation are analogous." <u>Clark v. California</u>, 739 F. Supp. 2d 1168, 1181-82 (N.D. Cal. 2010); <u>see</u> <u>also</u> <u>Gagnon</u>, 411 U.S. at 782 ("Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one.  Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." (footnotes omitted)).

Plaintiff certainly had notice of the "active participation" parole condition before he was arrested for violating it.

However, Plaintiff's Complaint can be read as alleging that Defendant deprived him of due process of law when she interpreted the "active participation" parole condition to determine that probable cause existed to further investigate whether Plaintiff had violated his parole, to refer the matter to the BPH, and to maintain a parole hold on Plaintiff. (See Complaint at 2-15, Exh. B). However, even assuming arguendo that Plaintiff has alleged a constitutional violation, he has not shown that the right in question was clearly established.

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" al-Kidd, 131 S. Ct. at 2083 (citation omitted); Reichle v. Howards, __ U.S. __, 132 S. Ct. 2088, 2093 (2012); see also Alston v. Read, 663 F.3d 1094, 1098 (9th Cir. 2011) ("It is not sufficient to allege the violation of abstract rights. Rather, the right the officials are alleged to have violated must be clearly established in a more particularized, and hence more relevant sense." (citations and internal quotation marks omitted)). "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably . . . anticipate when their conduct may give rise to liability for damages." Reichle, 132 S. Ct. at 2093 (citation and some internal quotation marks omitted). "In evaluating whether a right is

clearly established, [the Court] look[s] to the state of the law at the time of the incident in question." C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 986 (9th Cir. 2011), cert. denied, 132 S. Ct. 1566 (2012). "Whether the law was clearly established is an objective standard; the defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant." Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1073 (9th Cir. 2012) (citation and internal quotation marks omitted); Tamas, 630 F.3d at 846. Plaintiff "bears the burden of proving that his allegedly violated rights were clearly established." Galen v. County of Los Angeles, 477 F.3d 652, 665 (9th Cir. 2007); see also Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.").

Here, Defendant did not arrest Plaintiff.[11] (See Complaint at 4, Exh. B). Rather, Defendant was presented with a Charge Report

---

[11] "'Under California and federal law, probable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid.'" Sherman v. United States Parole Comm'n, 502 F.3d 869, 884 (9th Cir. 2007) (citation omitted). Thus, "if a parole officer reasonably believes a parolee is in violation of his parole, the officer may arrest the parolee." United States v. Rabb, 752 F.2d 1320, 1324 (9th Cir. 1984), abrogated in part on other grounds, Bourjaily v. United States, 483 U.S. 171 (1987); Sherman, 502 U.S. at 884; see also Turner v. Craig, 510 F. App'x 587, 587 (9th Cir. 2013) ("A law enforcement officer needs only a reasonable belief that a parolee has violated the terms of his parole in order to effectuate an arrest."), cert. denied, 2013 WL 3761293 (Oct. 7, 2013). However, a "parole officer is not required personally to effect the arrest . . . of his parolee to validate the arrest. . . ." United States v. Butcher, 926 F.2d 811, 814 (9th Cir. 1991).

indicating that while Plaintiff was at first actively participating in a Parolee Outpatient Clinic group on January 9, 2013, he subsequently "became verbally combative with passive aggressive comments toward the group leaders" and "failed to curtail his behavior" despite being "warned about his disruptive comments," which led to his removal from the group and his arrest.  (Complaint, Exh. B).  After reviewing the Charge Report, Defendant concluded that probable cause existed to further investigate whether Plaintiff had violated his parole, to refer the matter to the BPH, and to maintain a parole hold against Plaintiff until the allegations against him could be further investigated. (Id.).

Under the circumstances presented here, even if Defendant was incorrect in her determination that probable cause existed to believe that Plaintiff had violated a condition of his parole, such a mistake was reasonable and Plaintiff simply has not shown that every reasonable official would have known that maintaining a parole hold on Plaintiff to allow further investigation of the charges against him violated Plaintiff's constitutional rights.  Therefore, Defendant is entitled to qualified immunity.[12]  See Messerschmidt v. Millender, __ U.S. __, 132 S. Ct. 1235, 1244-45 (2012) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." (citation and internal quotation marks omitted)); Hunter v. Bryant, 502 U.S. 224, 228-29 (1991) (per curiam) ("Even if we assumed, arguendo, that [the Secret Service agents] . . . erred in concluding

---

[12]  Having reached this conclusion, it is unnecessary to address the other issues Defendant raises in her Motion.

that probable cause existed to arrest Bryant, the agents nevertheless would be entitled to qualified immunity because their decision was reasonable, even if mistaken."); Turner v. Craig, 510 F. App'x 587, 587-88 (9th Cir. 2013) (officers entitled to qualified immunity for confining plaintiff on a parole hold for 11 days when officers made a reasonable mistake that led to plaintiff's detention), cert. denied, 2013 WL 3761293 (Oct. 7, 2013); Yost v. Solano, 955 F.2d 541, 545 (8th Cir. 1992) (Parole officer who ordered parole hold on plaintiff and recommended a preliminary parole revocation hearing "did not violate [plaintiff's] constitutional rights by recommending that a probable cause hearing be held on whether [plaintiff] had violated his parole conditions, and therefore [the parole officer] is entitled to qualified immunity for her relevant conduct."); Malik v. Mackey, 268 F. App'x 83, 84 (2d Cir. 2008) ("Mackey reasonably believed that Malik had violated the terms of his parole. . . . Even if Mackey had been mistaken in his belief that Malik had violated his parole, qualified immunity protects him as long as his belief was reasonable.").

///

///

///

**V.**

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting this Report and Recommendation, (2) granting Defendant's Motion to Dismiss; and (3) directing that Judgment be entered dismissing this action with prejudice.

DATED: October 9, 2013

/s/ _____

ALKA SAGAR

UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.